UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

                                              Case No.  808-72583-reg

MARC B. TOLKIN,                       Chapter 11


                      Debtor.
-------------------------------------------------------------x
MARC A. PERGAMENT, Chapter 7 Trustee of
the Estate of Marc B. Tolkin,

                      Plaintiff,          Adv. Pro. No. 809-8311-reg
v.

HOPE PAGANO and RON TOLKIN,

                      Defendants
-------------------------------------------------------------x

### *MEMORANDUM DECISION*

This matter is before the Court pursuant to a trial held with respect to claims asserted against Hope Pagano (the "Defendant") in an adversary proceeding commenced by Marc A. Pergament (the "Trustee" or the "Plaintiff"). The Trustee seeks to avoid and recover $89,064.81 in unauthorized and undisclosed post- petition transfers by Marc B. Tolkin (the "Debtor") to the Defendant pursuant to 11 U.S.C. §§ 549(a) and 550(a).  Because of the Debtor's serpentine travels through bankruptcy by commencing a case under Chapter 13, which was then converted to a Chapter 11 case, which was then converted to a Chapter 7 case, the Chapter under which the Debtor operated governs whether the Trustee may recover the transfers as property of the Debtor's estate.  While the statute authorizing the Trustee to seek recovery remains constant, what constitutes property of the Debtor's estate changes under each Chapter of the Bankruptcy Code.  While in Chapter 13, the Debtor made a $5,000.00 transfer, which the Court finds is recoverable under § 549(a) of the Bankruptcy Code.  The Debtor

made this transfer to an undisclosed creditor outside the Chapter 13 plan process. The funds were not transferred by the Debtor for the purposes of paying for ordinary expenses incurred by the Debtor and are therefore not subject to Bankruptcy Code § 348(f). The Court of Appeals for the Second Circuit recently affirmed *In re Pisculli,* 426 B.R. 52 (E.D.N.Y. 2010), *aff'd*, 2011 WL 338431 (2d Cir. Feb. 4, 2011) in which the District Court for the Eastern District of New York held that under certain circumstances, § 348(f) may not be applied to exclude from a debtor's estate property which was transferred prior to conversion of the case to another chapter. According to the District Court in *Pisculli*, to find that such conduct by a debtor is protected by the provisions of Bankruptcy Code § 348(f) would create an absurd result which is at odds with the purpose of § 348(f) and with the Bankruptcy Code as a whole. Based on the guidance provided by *In re Pisculli,* the Court concludes that the funds transferred to the Defendant during the Chapter 13 phase are property of the Debtor's estate subject to recovery by the Trustee pursuant to § 549(a).

As for the transfers to the Defendant in the amount of $54,000.00 during the Chapter 11 phase, the Trustee has established that $4,000.00 of the $54,000.00 transferred was property of the Debtor's estate pursuant to Bankruptcy Code § 1115(a) and is therefore recoverable. The remaining $50,000.00 transferred is not recoverable by the Trustee because the source of the $50,000.00 transfer was the bank account of a non-debtor corporation. Absent a showing that the non-debtor corporation was the alter ego of the Debtor, which the Trustee has neither alleged nor proved, or that the funds belonged to the Debtor under some other theory, the Trustee may not recover these funds. Finally, the transfers made by the Debtor after the case was converted to Chapter 7 are not recoverable because the Trustee failed to establish that the transferred funds were property of the Debtor's estate. Based on the evidentiary  record this Court finds that the Trustee failed to establish whether the funds were

generated from the Debtor's post-petition earnings (which would not be included as property of the Debtor's estate) or whether the funds were proceeds generated from the sale of the Debtor's asset (which would constitute property of the Debtor's estate). Therefore the Trustee is entitled to a judgment in the total amount of $9,000.00 plus interest from the date the Trustee first demand the return of the funds, which appears to be the date the adversary proceeding was commenced.

### *Procedural History*

On October 15, 2007, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code ("First Case"). Pursuant to a motion made by the Chapter 13 Trustee, the First Case was dismissed and an order was entered dismissing the First Case on March 17, 2008. On May 19, 2008 ("Second Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code ("Second Case"). On June 26, 2008, an order was entered converting the Second Case to a case under Chapter 11 pursuant to motion by the Debtor.[1] On December 10, 2008, the Debtor's Second Case was converted to a case under Chapter 7 of the Bankruptcy Code pursuant to Bankruptcy Code § 1112(b). The Trustee was duly appointed and qualified to serve as the Trustee on December 10, 2008.

On July 31, 2009, the Trustee commenced this adversary proceeding against the Defendant and Ron Tolkin, the Debtor's father. The Trustee alleges that after the Second Case was filed, the Debtor sold his 40% interest in the Alnic Group LLC, a corporation, to a third party and used the proceeds from the sale to make unauthorized transfers ("Transfers") in the amount of $70,000.00 each to Pagano and Ron Tolkin. The Trustee seeks to avoid the Transfers pursuant to 11 U.S.C. § 549(a), and

---

[1]The Debtor filed the motion to convert the Second Case from Chapter 13 to Chapter 11 because the Debtor was ineligible to be a Chapter 13 debtor pursuant to Bankruptcy Code § 109(e).

to recover the Transfers pursuant to 11 U.S.C. § 550(a) for the benefit of the Debtor's estate.

On December 18, 2009, the Trustee filed a motion to compromise and settle this adversary proceeding pursuant to Fed. R. Bankr. P. 9019.  Under the proposed terms of the settlement ("Stipulation of Settlement"), Ron Tolkin agreed to pay $50,000 to the Trustee in full settlement of the claims set forth in this adversary proceeding.  The Court approved the proposed Stipulation of Settlement and on April 16, 2010, an order was entered granting the Trustee's motion to settle this adversary proceeding, which was then closed.  Thereafter, Ron Tolkin failed to make a scheduled payment pursuant to the terms of  the Stipulation of Settlement and on June 18, 2010, the Trustee made a motion to reopen this adversary proceeding to enter default judgment against Ron Tolkin in the sum of $72,000.00 plus interest, for an aggregate sum of $81,000.00, less $22,500.00 which was previously paid to the Trustee by Ron Tolkin.  On the same date, the Trustee filed a motion for default judgment against the Defendant.  The Defendant filed an answer to the complaint and opposition to the Trustee's motion for default judgment, which motion the Trustee subsequently withdrew.  On July 19, 2010, an order was entered granting the Trustee's motion to reopen this adversary proceeding and enter default judgment against Ron Tolkin, and the remainder of this adversary proceeding was restored to the Court's calendar.   On August 30, 2010, the Trustee filed a motion for summary judgment ("Summary Judgment Motion") which the Defendant opposed.  On September 27, 2010, the Trustee filed a reply, and increased the dollar amount of the transfers he sought to recover from $70,000.00 to $89,064.81.  A hearing on the Summary Judgment Motion was held on September 29, 2010 and the Court denied the motion on the basis that there were disputed issues of fact concerning the sources of the funds that were transferred to the Defendant, and scheduled the matter for a trial on December 7, 2010.   Thereafter, the parties engaged in extensive motion practice, which resulted *inter*

*alia,* in the entry of orders (1) directing that the Defendant could take the Trustee's deposition only if the Defendant could show that the Trustee had any independent knowledge of the transfers at issue, (2) denying the Defendant's request to adjourn the trial, (3) denying the Defendant's request to dismiss the adversary proceeding with prejudice, and (4) granting the Defendant's motion to direct the Trustee to turn over documents requested by the Defendant in his possession on or before November 5, 2010.  On November 19, 2010, the Defendant filed two more motions - a motion to preclude the Trustee from introducing any evidence at trial which was not turned over to the Defendant on or before November 5, 2010, and a motion to dismiss the adversary proceeding.  The Trustee filed opposition to both motions.  On November 30, 2010, Steven Pagano filed a motion to preclude the Trustee from introducing Steven Pagano's deposition testimony at trial.

On December 1, 2010, the Trustee and Pagano filed a Joint Pretrial Memorandum. In the Joint Pretrial Memorandum, the Trustee summarizes his case as follows: "Plaintiff seeks an order and monetary judgment against Hope Pagano in the sum of $89,064.81 for funds that were paid to Hope Pagano under 11 U.S.C. § 549(a) and 550(a)."  The Defendant summarizes the case as follows: "Defendant seeks dismissal of the case.  The Plaintiff cannot show that the Defendant neither received nor controlled any transfers from the Debtor's estate that can be avoided under section 549(a).  Nor can Plaintiff recover the [sic] cannot provide evidence of the source of said funds complained about."

On December 7, 2010, the Court entertained the three remaining motions and denied all of them.  Thereafter, the trial was held, and the matter was marked submitted.

### *Facts*

The Defendant is married to Steven Pagano.  Virginia Tolkin, Steven Pagano's sister,  is the Debtor's wife.  On October 1, 2007, prior to the First Petition Date, the Defendant and Steven Pagano

loaned the Debtor $150,000.00 and the Debtor executed a balloon note ("Note").  Pursuant to the terms of the Note, the Debtor was obligated to repay the principal plus accrued interest on the Note on or before December 1, 2007.  According to the Defendant's testimony at trial, the Defendant borrowed from her home equity line of credit account with Chase Bank ("Chase Account") to obtain the $150,000.00.  The Defendant was not listed as a creditor in the schedules filed in the Second Case.

According to the Debtor's schedules, the Debtor had $250.00 in cash and $2,000.00 in his checking account as of the Second Petition Date.  On Schedule B, the Debtor disclosed that he was President and 80% shareholder of Tolkin Foods, Inc., and that he was Vice President and 40% shareholder of Alnic Foods of E. Northport, Inc., and Alnic Foods of Smithtown, Inc.[2]   The Debtor listed the current value of the Debtor's interest in these entities as "unknown."  According to Schedule I, the Debtor's net monthly income from his employment with Tolkin Foods, Inc. was $5,122.51.  The Debtor also listed in Schedule I monthly income in the amount of $4,881.53 from "Alnic - Smithtown" and $4,500.00 as a quarterly bonus from an undisclosed source, bringing his net monthly income to $14,494.04 according to the Debtor's calculations.[3]  According to Schedule I, the Debtor's monthly net income, when combined with his wife's income, amounted to $16,307.32.  According to Schedule J, the Debtor's monthly expenses amounted to $9,433.00, leaving the Debtor with  $6,874.32 each

---

[2]It appears that these two corporations were owned by the Alnic Group, LLC, and the Debtor was a 40% shareholder of the Alnic Group, LLC.   According to the Debtor's Statement of Financial Affairs, the Debtor acquired his interest in these two corporations in 2007.

[3]According to the Debtor's Statement of Financial Affairs,  the Debtor's gross income, combined with his wife's income, for the first five months of 2008 equaled $30,400, which amounts to approximately $6,000.00 per month.  This is less than half of the Debtor's listed monthly gross income as of the Second Petition Date. In addition, it is not clear if the "quarterly bonus" in the listed amount of $4,500 per month was pro rated and each bonus was in fact $13,500.00 per quarter, or whether the quarterly bonus should have been listed at $1500.00 per month, to reflect a bonus of $4,500.00 per quarter.

month to devote to Chapter 13 plan payments.  Prior to the Second Petition Date, based on the copies of the deposit slips submitted by the Trustee in support of the Summary Judgment Motion[4], the Debtor made $4,900.00 in transfers into the Chase Account.  During the time period that the Debtor was a Chapter 13 debtor, the Debtor made a single $5,000.00 transfer into the Chase Account.  After the Second Case was converted from Chapter 13 to Chapter 11, the Debtor made $54,000.00 in transfers into the Chase Account.  Included among  these transfers is a deposit of $50,000.00 made on July 22, 2008, approximately two months after the Second Case was filed.  This deposit was made  into the Chase Account via a cashier's check made payable to Chase Bank.  (Defendant's Ex. D).  The Debtor's name is listed on the lower left portion of the cashier's check.  After the Second Case was converted to Chapter 7, the Debtor made $9,606.00 in transfers into the Chase Account. The Debtor did not disclose any of these transfers to the Court or to the Chapter 13 Trustee.  The Chapter 7 Trustee did not discover that transfers were made during the pendency of the Chapter 7 phase until the § 341 meeting was held.

        The Debtor testified that he transferred a total of approximately $80,000.00 into the Chase Account for the benefit of the Defendant, which total amount is unsubstantiated by the documentary evidence.  The Defendant testified that she made no deposits into the Chase Account from approximately July, 2008 through August, 2010.  While the Defendant admitted at trial that the Debtor deposited funds into the Chase Account for her benefit, she asserted that the total amount deposited by the Debtor was approximately $63,000.00, not the $80,000.00 claimed by the Debtor.  Other than the copy of the $50,000.00 check and copies of the deposit slips submitted by the Trustee in support of the Motion for Summary Judgment, no documentary evidence was introduced to support either the

---

        [4]The Court takes judicial notice of the exhibits submitted by the Trustee in support of the Summary Judgment Motion.

Debtor's or Pagano's testimony regarding the actual amount the Debtor deposited into the Chase Account, or the dates of the transfers in question.[5]

The Debtor testified during cross-examination that the funds deposited into the Chase Account were derived from either his income or from the proceeds of the sale of the Debtor's 40% interest in the Alnic Group, LLC.  This testimony conflicts with the allegations contained in the complaint that the sole source of the funds used to make the payments into the Chase Account were the proceeds derived from the Debtor's sale of his 40% interest in the Alnic Group, LLC.  Upon further questioning regarding the $50,000.00 deposit made on July 22, 2008, the Debtor admitted that none of the $50,000.00 was derived from the sale of the Alnic Group, LLC.  The Debtor further stated:

> It [the $50,000.00 the Debtor deposited into the Chase Account] was money I had access to.  Either it was money that I had from business or money that I had borrowed or it was money I was going to use for other reasons . . .  I'm sure at one point (the money) went through my bank account but it wasn't cash money but I am sure it came from my account. . . . It would have been my personal account or my business account that I had at the time.  Back then I had Tolkin Foods.

The Debtor testified that he had access to a bank account for Tolkin Foods, Inc., a corporation in which he testified he owned 100% of the shares.[6]  Based on the Debtor's testimony, the funds used for the $50,000.00 cashier's check came from Tolkin Foods, Inc. from earnings or from loan proceeds

---

[5]The Trustee's failed to introduce any bank statements to support his case.  This is a relevant  omission, especially in light of the fact that the Trustee was aware at the summary judgment stage that there were material issues of fact in dispute concerning the sources of the funds used to repay the Defendant.  The Trustee introduced at the summary judgment stage a handwritten list from the Debtor setting forth all of the payments the Debtor made to the Chase Account in support of his Motion for Summary Judgment, many of the transfers listed are not supported by copies of deposit slips.  While the deposit slips are probative as to the amount of money deposited into the Chase Account, the Debtor's handwritten list is not probative as to the amount or the sources of the funds deposited into the Chase Account.

[6]  This directly conflicts with the schedules filed in the Second Case, where the Debtor listed his ownership of 80% of the shares of Tolkin Foods, Inc. as of the Second Petition Date.

earmarked for renovations to a restaurant owned by Tolkin Foods, Inc.  However, his testimony is not supported by his schedules, which reflect that the Debtor only had $2,250.00 in cash as of the Second Petition Date.  There is no documentary evidence supporting the Debtor's claim that he had loan proceeds available to him to make this payment and he admits on his Schedules his income was not sufficient to generate $50,000.00.  Given the inconsistencies in the Debtor's testimony, there is insufficient evidence to make a finding, based on the Debtor's testimony alone, that he had loan proceeds at his disposal to make the $50,000.00 transfer.  Therefore, the Court finds that all or part of the $50,000.00 payment could have only come from one of the sources identified by the Debtor - the bank account for Tolkin Foods, Inc.[7]

As for the remaining $4,000.00 transferred by the Debtor into the Chase Account during the pendency of the Second Case in Chapter 11, the Trustee established that these funds came from the Debtor's income or from the proceeds generated by the sale of the Debtor's interest in the Alnic Group, LLC.  After the Debtor's Second Case was converted to Chapter 7, the Debtor made a number of transfers into the Chase Account.  Based on the deposit slips introduced by the Trustee in support of the Summary Judgment Motion, a total of  $9,606.00 was transferred by the Debtor into the Chase Account.  However, other than to state that he used his own funds for the deposits into the Chase Account, the Debtor never testified as to the specific source of the funds for each transfer.

### *Discussion*

---

[7]According to Steven Pagano's testimony, he understood that Virginia Tolkin provided the  funds for the $50,000.00 check, which she generated from income earned while waitressing at the restaurant owned by Tolkin Foods, Inc.   This testimony was refuted by Virginia Tolkin, who testified that the money did not come from her earnings, that she did not have $50,000.00 and she never told the Defendant or Steven Pagano that she would repay them using her earnings as a waitress.  The Court does not adopt this as a finding of fact as there is no support for it in the record.

*Applicable Avoidance Statutes*

The Trustee seeks to avoid the transfers made by the Debtor into the Chase Account for the

benefit of the Defendant under Bankruptcy Code §§ 549(a) and 550(a).

Section 549(a) states as follows:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a
transfer property of the estate -
           (1) that occurs after the commencement of the case; and
           (2) (A) that is authorized only under section 303(f) or 542(c) of this title;
or
                (B) that is not authorized by the court.

11 U.S.C. § 549(a).

Section 550(a) provides in relevant part:

[T]o the extent that a transfer is avoided under section 544, 547, 548, 549, 553(b), or
724(a) of this title, the trustee may recover, for the benefit of the estate, the property
transferred, or, if the court so orders, the value of such property, from . . . the initial
transferee of such transfer or the entity for whose benefit such transfer was made; or . . .
any immediate or mediate transferee of such initial transferee.

 11 U.S.C. § 550(a).

As the Bankruptcy Court for the District of Delaware summarized:

The purpose of section 549 is to allow the trustee to avoid those postpetition transfers
which deplete the estate while providing limited protection to transferees who deal with
the debtor.  Fraud by the debtor and, except with respect to purchasers of real property,
good faith on the part of the transferee are irrelevant to the application of this section. 5
COLLIER ON BANKRUPTCY ¶ 549.02 (15th ed. Rev. 2005). Section 549 is geared to
protecting the estate against unauthorized, post-petition transfers by the debtor or by
creditors seizing property in order to perfect their liens.  *In re Taft*, 262 B.R. 55, 60
(Bankr. M.D. Pa. 2011); *40235 Washington Street Corp. v. Lusardi,* 329 F.3d 1076,
1081 (9th Cir. 2003) ("The purpose of section 549, in contrast, is to provide a just
resolution when the debtor himself initiates an unauthorized postpetition transfer.").

*ETS Payphones, Inc. v. AT&T Universal Card* (*In re PSA, Inc.*), 335 B.R. 580, 584 (Bankr. D. Del.

2005).  While this section does contain limited exceptions for certain innocent purchaser of real

property, this section does not provide any protection to an initial transferee who takes the debtor's

personal property in good faith.  *Id.*  The Trustee, who is the party seeking to set aside the transfers to the Defendant, bears the burden of proof as to each element under this section.  *In re Westchester Tank Fabricators, Ltd.,* 207 B.R. 391, 396 (Bankr. E.D.N.Y. 1997) (other citations omitted).

The Bankruptcy Code states, a transfer is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." Bankruptcy Code § 101(54).  There is no dispute that transfers were made into the Chase Account after the Second Case was filed, and that the Defendant is the holder of the Chase Account. Therefore, the Trustee has established that the Defendant was the transferee of property in the form of deposits into the Chase Account.  The Trustee has also established that the Debtor made the deposits in the aggregate amount of $68,606.00.

For the transfers to be avoided under § 549(a), the Trustee must establish that the subject "property" was at the time of the transfer "property of the estate." 11 U.S.C. § 549(a). *In re Westchester Tank Fabricators, Ltd.,* 207 B.R. at 397 (citing *Martin Machinery Co. v. Williams (In re Newman)*, 875 F.2d 668, 670 (8th Cir.1989) and *In re Hargis*, 887 F.2d 77, 79 (5th Cir. 1989)). Transfers of property by the debtor to prepetition creditors from non-estate assets are not recoverable. *In re Hargis,* 887 F.2d at 79.   "Property of the estate" is defined under the Bankruptcy Code as, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Because the Second Case was commenced as a Chapter 13 case which was subsequently converted to Chapter 11 and then finally converted to Chapter 7, what is recoverable as property of the Debtor's estate changes depending upon whether the Debtor was a Chapter 7, Chapter 13 or Chapter 11 debtor.  Therefore, the Court must examine the dates of each transfer to determine whether the Trustee has established that the funds transferred during each phase of the Debtor's case

were property of the Debtor's estate.

### Chapter 13 Phase

During the time period the Second Case was a case under Chapter 13, the Debtor made a single $5,000.00 deposit into the Chase Account.   In order to avoid this transfer under § 549, the Trustee must prove that the funds constitute property of the Chapter 13 estate.  In a Chapter 13 case, property of the estate includes, in addition to the property specified under § 541:

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a).

Section 1306(a) expands the definition of "property of the estate" to include assets acquired after the petition is filed in a Chapter 13 case.  However, if a Chapter 13 case is converted to a case under Chapter 7 or a case under Chapter 11, the Bankruptcy Code modifies the definition of "property of the estate" to exclude property transferred by the Debtor when operating under Chapter 13. Additionally, property the debtor acquired during the Chapter 13 phase is also excluded from the definition of property of the estate. Bankruptcy Code § 348(f) provides;

(f)(1) Except as provided in paragraph (2) [which is inapplicable in this case], when a case under chapter 13 of this title is converted to a case under another chapter under this title -

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of    the property of the estate as of the date of conversion.

11 U.S.C. § 348(f).

Simply stated, under § 348(f), property acquired post-petition in a Chapter 13 case  is excluded from property of the estate upon conversion of the case to another chapter.  *Pisculli v. T.S. Haulers, Inc. and Ranco Sand & Stone Corp. (In re Pisculli),* 426 B.R. 52, 62 (E.D.N.Y. 2010), *aff'd,* No. 10-1553-bk, 2011 WL 338431 (2d Cir. Feb. 4, 2011) (citing *In re Bostick,* 400 B.R. 348, 357 (Bankr. D. Conn. 2009), and *In re Laflamme,* 397 B.R. 194, 201 (Bankr. D.N.H. 2008)) (other citations omitted.).

It is axiomatic that if the statute's language is plain, the court's role is to enforce it according to its terms.  *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989).  However, even where the plain meaning is clear, where the "literal application of a statute will produce a result demonstrably at odds with the intention of its drafters," the intention of the drafters, rather than the strict language, will control. *Id.* (other citations omitted).  In addition, the court is to take into account whether such reading conflicts with any other section of the Bankruptcy Code or with any other important state or federal interest.  *Id.*  The Bankruptcy Code must be interpreted with an eye towards the "whole law, and to its object and policy."  *In re Boodrow,* 126 F.3d 43, 49 (2d Cir. 1997) (other citations omitted.).

As the District Court for the Eastern District of New York recently explained, courts may look beyond the language of a statute under circumstances which are present in this case:

> Although courts are generally "bound to enforce a statute in accordance with the plain meaning of its terms[,] [a court] may look beyond the language of the statute if '(1) a literal application of the statutory language would be at odds with the manifest intent of the legislature; (2) a literal application of the statutory language would produce an absurd result; or (3) the statutory language is ambiguous.' " *In re Standiferd*, 2008 WL 5273690, at * 7 (quoting *In re Wilbur*, 344 B.R. 650, 653 (Bankr.D.Utah 2006)).

> "[E]ven when the plain meaning [of a statute] [does] not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' [the Supreme] Court has followed that purpose, rather than the literal words [of the statute]." *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (quoting *Takao Ozawa v. United States*, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922)).

*In re Pisculli*, 426 B.R. at 63.

In *In re Pisculli,* which was affirmed by the Court of Appeals for the Second Circuit, Judge Feuerstein upheld this Court's finding that property of a Chapter 7 debtor's estate may include property which was transferred during the pendency of the case in Chapter 13. The Chapter 7 trustee had commenced an adversary proceeding to bar the debtor's discharge under § 727(a)(2), and this Court had ruled in the Chapter 7 trustee's favor on the basis that the funds transferred were property of the debtor's estate. In *Pisculli,* the debtor liquidated a corporation in which he held 100% of the shares of stock, paid off its creditors, and used the remaining funds for his own benefit. This Court found that the proceeds from the sale of the corporation's assets were property of the debtor's estate either because the debtor was the only person with any interest remaining in the defunct corporation and these assets belonged to the debtor, or because the business was the alter ego of the debtor. On appeal, the debtor asserted that § 348(f) excluded from property of the estate property which was transferred prior to conversion of the case to Chapter 7. Judge Feuerstein examined the legislative history of § 348(f), and concluded that the purpose of this statute was to 1) ensure that debtors would not be penalized for attempting to repay creditors under a Chapter 13 plan that the debtors could not complete, and 2) equalize the treatment such debtors would receive had they filed for Chapter 7 relief in the first instance. *In re Pisculli,* 426 B.R. at 62 (citing *In re Bostick,* 400 B.R. at 359 and *In re Standiferd,* No. 7-00-16958 MA, Adv. No. 07-1076, 2008 WL 5273690 at *7 n.8 (Bankr. D.N.M. Dec.

17, 2008) (other citations omitted)).  Judge Feuerstein concluded that these assets were property of the debtor's estate because  there was sufficient evidence to find that the corporations were the alter egos of the debtor, or because the debtor had the sole remaining interest in the sale proceeds due to the liquidation of the corporations.  Judge Feuerstein also found that § 348(f) was inapplicable in the case before her because the proceeds from the sale of the trucks were proceeds from property the debtor had a legal or equitable interest in as of the commencement of the adversary proceeding, and were not property of the estate due to the reach of § 1306(a).  Therefore, the proceeds were property of the estate pursuant to § 541(a).  She also held that held that "applying 11 U.S.C. § 348(f) to prevent a creditor from objecting to a debtor's discharge under Section 727(a)(2), based upon a post-petition, pre-conversion transfer of property, would lead to the absurd result that allows a debtor to hinder his creditors during a Chapter 13 proceeding by transferring or otherwise disposing of assets prior to conversion without any consequence."  *Id.* at 65.

Other courts interpreting this section, which were cited with approval in *Pisculli,*  have also applied § 348(f) so as not to exclude property which the debtor acquired during the pendency of the Chapter 13 case and then transferred prior to conversion of the case, based on the circumstances of the transfers.  *See In re Standiferd,* 2008 WL 5273690 *7 (In the context of a section 727(a) action to deny the debtors a discharge, property of the debtors' Chapter 7 estate included profits earned while the debtors' case was a Chapter 13 case, where the profits were not disclosed to the Chapter 13 trustee or the court and the debtors used the profits to pay for home improvements); *In re Fobber,* 256 B.R. 268, 279 n. 6 (Bankr. E.D. Tenn. 2000) (Court recognizes that strict application of § 348(f) would "thwart any attempt by a Chapter 7 trustee to challenge a debtor's fraudulent disposition of property which came into the estate solely because of the expansive definition of property of the estate provided by §

1306(a)").

The *Pisculli* court also noted that the Chapter 13 debtor's right to use estate funds is not unfettered:

> Although . . . § 1303 of the Bankruptcy Code vests the debtor with the exclusive right to use and control all property of the estate . . .  neither that statute, nor Section 1306(b) . . . creates a right to transfer and dispose of the property as he sees fit.  Rather, taken together, the rights conferred by Sections 1303 and 1306(b) merely provide the Chapter 13 debtor with the implicit right to use property of the estate for ordinary and necessary living expenses, provided such use is not in bad faith.

*Id.* at 65-66. (Other citations omitted).

Since the $5,000.00 constitutes property of the Debtor's estate as post-petition earnings or as property in the Debtor's possession as of the Second Petition Date, the Court must determine whether the property is excluded from the estate pursuant to § 348(f).  Based on *Pisculli,* which provides considerable guidance in the proper interpretation of this statute, the funds remain property of the Debtor's estate despite conversion of the case to Chapter 7.  The $5,000.00 was not used for the Debtor's ordinary and necessary living expenses, and the Code contains no section which expressly authorizes the Debtor to make undisclosed transfers to undisclosed prepetition creditors outside of the plan process.  The Debtor did not receive prior Court authorization to make the transfer.  Based on the facts of this case, there is no equitable reason to exclude the $5,000.00 from the Debtor's estate.  Therefore the $5,000.00 is property of the Debtor's estate subject to recovery in an action pursuant to Bankruptcy Code § 549(a).  Because the transfer was not authorized by the Court or any provision of the Bankruptcy Code, this transfer meets all of the requirements set forth in § 549.  The Defendant has failed to rebut the Trustee's case, and the $5,000.00 transfer is avoided and shall be recovered pursuant to Bankruptcy Code §§ 549 and 550.

**Chapter 11 Phase**

In an individual Chapter 11 case, property of the estate also includes, in addition to the

property specified in § 541:

> (1) all property of the kind specified in section 541 that the debtor acquires after the
> commencement of the case but before the case is closed, dismissed, or converted to a
> case under chapter 7, 12, or 13, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case
> but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or
> 13, whichever occurs first.

11 U.S.C. § 1115(a).

The language of this statute parallels the language of § 1306, and accomplishes the same goal

of broadening the scope of property of the debtor's estate significantly beyond the parameters of §

541.  However, unlike in a Chapter 13 case, there is no provision similar to § 348(f) to modify the

result upon conversion of a Chapter 11 case to another chapter.  *In re Quillen*, 408 B.R. 601, 620 n. 33

(". . . Section 1115 . . . is identical to Section 1306.  Curiously though, no counterpart to Section

348(f) was codified in BAPCPA to correspondingly adjust the reach of Section 1115.").  Therefore,

what is captured as property of the debtor's estate under § 1115 remains as property of the estate, even

after conversion of the case to another chapter.

The Court therefore must examine each of the transfers to determine whether the funds were

property of the Debtor's estate at the time of the transfers.  The first transfer in the amount of

$50,000.00 occurred on July 22, 2008.  These funds may only be considered property of the Debtor's

estate if 1) the funds were property of the Debtor's estate upon the Second Petition Date, 2) the funds

were acquired by the Debtor during the pendency of the Chapter 11 phase, or 3) the funds represent

earnings for services performed by the Debtor during the pendency of the Chapter 11 phase.  Based on

the record before the Court, the funds were not property of the Debtor's estate as of the Second

Petition Date.  The Debtor had less than $3,000.00 in his checking account according to his schedules, and the Debtor's stock interests in the Alnic Group, LLC and Tolkin Foods, Inc. were unliquidated at this point in time.  Based on the schedules filed in the Second Case, the Debtor's income was insufficient to generate $50,000.00 during the two months after the Second Case was filed.  According to the Debtor's unsubstantiated  testimony at trial, the Debtor had two additional sources of revenue  at the time the transfer was made; Tolkin Foods, Inc., and some possible loan proceeds which were never defined or adequately explained..  Other than the Debtor's testimony, the record is barren as to the actual source of the $50,000.00 transfer. Leaving aside the phantom loan proceeds, even if the funds were taken from Tolkin Foods, Inc. and transferred directly to the Defendant, the funds do not constitute property of the Debtor's estate because Tolkin Foods, Inc. is a separate legal entity. Property of a corporation, in this case the funds in the bank account held by Tolkin Foods, Inc., belongs to the corporation, not the debtor/shareholder, even if the debtor owns 100% of the stock.  *In re Rodriguez,* No. 05-19599, Adv. No. 06-01119 (ALG) *7, 2008 WL 3200215 (Bankr. S.D.N.Y. August 5, 2008) (citing *Northeast Neb. Econ. Dev. Dist. v. Wagner (In re Wagner),* 305 B.R. 472, 475 (B.A.P. 8th Cir.2004); *Mcorp Mgmt. Solutions, Inc. v. Thurman (In re Thurman),* 901 F.2d 839, 841 (10th Cir.1990); and *Wines v. Wines (In re Wines),* 114 B.R. 794, 796 (Bankr. S.D.Fla.1990)). Ownership of all of the outstanding stock of a corporation is not the equivalent of ownership of the subsidiary's property or assets.  *In re Beck Industries, Inc.,* 479 F.2d 410, 415 (2nd Cir. 1973). Therefore, if the Debtor orchestrated the transfer of funds belonging to Tolkin Foods, Inc., to one of the Debtor's creditors, it does not follow that the transferred funds constitute property of the Debtor's estate.  The Trustee failed to introduce bank records showing that these funds were ever in the Debtor's personal bank account, and without probative evidence establishing that the funds belonged

to the Debtor, the Court cannot find that the funds are recoverable by the Trustee.

The Court has concluded that the funds were not generated from the Debtor's earnings and the Trustee has not proven that property held by Tolkin Foods, Inc. is the Debtor's property under the theory of alter ego or under any other theory.  In the case of *Pisculli,* the record contained sufficient evidence for this Court to conclude that the debtor and the businesses owned by the debtor were one and the same; they shared the same address, the debtor ignored corporate formalities, and the debtor frequently used business funds for his own personal expenses.  *Id.* at 61.  As a result, it was appropriate to pierce the corporate veil to find that the business asset was property of the debtor's estate.  In the instant case, there is no evidence regarding whether the Debtor treated Tolkin Foods, Inc. as his own personal asset, whether the two shared the same addresses, and whether the corporate formalities applicable to Tolkin Foods, Inc. were generally ignored.  Beyond the fact that the Debtor is the majority shareholder and President of Tolkin Foods, Inc., and he withdrew funds from the bank account of Tolkin Foods, Inc. to pay the Defendant, the record is devoid of any information regarding the Debtor's relationship to Tolkin Foods, Inc.  While the Debtor's conduct with respect to this withdrawal raises questions, the Trustee failed to introduce evidence which this Court could rely upon to conclude that the funds taken from the Tolkin Foods, Inc. bank account belonged to the Debtor's estate.  As to whether the $50,000.00 was derived from loan proceeds, the record is also devoid of any evidence to support such a finding.  The Debtor did not indicate whether this was a personal loan or a loan to Tolkin Foods, Inc., and without more to substantiate the existence of this loan, the Court cannot conclude that the funds constituted loan proceeds.  Therefore, the Trustee has failed to establish that the $50,000.00 was property of the Debtor's estate at the time of the transfer, and this sum is not recoverable under § 549(a) of the Bankruptcy Code.

In addition to the $50,000.00 transfer, the Trustee seeks to recover a $1,000.00 transfer made on September 13, 2008, a $2,000 transfer made on October 14, 2008, and a $1,000.00 transfer made on November 15, 2008.  The Debtor testified that the funds came from proceeds generated from the sale of his interest in the Alnic Group, LLC or from his income.  The September 13, 2009 transfer was made prior to the date the Debtor sold his 40% interest in the Alnic Group, LLC, and the Court finds that these funds were derived from the Debtor's post-petition earnings.  As such, they constituted property of the Debtor's estate at the time of the transfers.  The remaining two transfers could have been derived either from the Debtor's post-petition earnings or from the proceeds derived from the sale of the Debtor's interest in the Alnic Group, LLC.  Because both sources of funds would constitute property of the Debtor's estate under either Bankruptcy Code §§ 541 or 1115(a), the Court need not determine with any certainty the actual source of the funds.  These transfers were made without Court authorization and were not authorized pursuant to any applicable Bankruptcy Code provision. Bankruptcy Code § 1108 permits a Chapter 11 debtor to operate the debtor's business.  Bankruptcy Code § 363(c) permits the debtor to use property of the estate in the ordinary course of that business without notice or a hearing.  While the Court need not address whether an individual Chapter 11 debtor is authorized under these sections to use property of the estate for the debtor's ordinary living expenses, it is clear that these sections do not permit the Debtor to use estate funds to pay a prepetition creditor outside of the Chapter 11 plan process without prior Court authorization.    Therefore, the Trustee has sustained his burden with respect to the recovery of  these transfers in the aggregate amount of $4,000.00 and the Defendant has failed to rebut the Trustee's case as to these transfers.

**Chapter 7 Phase**

Once the Second Case was converted to Chapter 7, property of the Debtor's estate is

determined solely by reference to § 541 of the Bankruptcy Code.  It appears that the Debtor made a series of transfers to the Defendant totaling $9,606.00.  To the extent the funds were derived from the Debtor's post-petition earnings, they would not constitute property of the Debtor's estate.  Bankruptcy Code § 541(a)(6) specifically excludes from property of the debtor's estate "earnings from services performed by an individual debtor after the commencement of the case."  11 U.S.C. § 541(a)(6).  To the extent the funds were derived from the sale of the Debtor's interest in the Alnic Group, LLC, they would constitute property of the Debtor's estate pursuant to § 541(a)(6), which includes proceeds or profits from property of the estate.   However, the Debtor testified that the actual source of the funds was either the Debtor's income or the proceeds from the sale of the Debtor's interest in the Alnic Group, LLC.  Because income from services performed post-petition are excluded from property of the estate, the Court cannot determine whether the funds transferred by the Debtor while in Chapter 7 were property of the estate.  As such, the monies transferred during this phase of the Debtor's case are not recoverable under § 549(a) and the Trustee may not recover any transfers made after the Debtor's case was converted to Chapter 7.

**Conclusion**

Based on the record before the Court, the Trustee is entitled to recover a total of $9,000.00 pursuant to § § 549(a) and 550(a).  These funds were property of the Debtor's estate at the time the transfers were made, the Debtor transferred these funds to the Defendant by depositing them in the Chase Account, and the transfers were not authorized by the Bankruptcy Code or by any order of this Court.  The Court shall enter a judgment consistent with this Memorandum Decision.

Dated: Central Islip, New York
  April 5, 2011        By: _*/s/ Robert E. Grossman*_____
                Robert E. Grossman, U.S.B.J.